## F. B. COLLINS INV. CO. et al. v. WAIDE et al.

No. 8756—Opinion Filed June 25, 1918.

(173 Pac. 835.)

### 1. Mortgages—Fraud.

A guardian entered into and carried out a conspiracy resulting in a fraudulent sale of his ward's land. Such sale was made under order of the county court, and the proceedings in regard thereto, on their face, were regular, including a deed to a bogus purchaser, who subsequently, in furtherance of the conspiracy executed, without consideration, a deed to another conspirator for said lands, who secured a loan from an investment company, and executed a mortgage upon said land to secure the payment of the

loan, which mortgage was by the trial court ordered to be canceled upon the ground of fraud, but the court found that no actual knowledge of such fraud came to such investment company. Held that, in the absence of proof that such investment company had knowledge of facts which, if followed, would have disclosed the fraud practiced in the sale of said lands. it was reversible error to order said mortgage canceled.

**2. Vendor and Purchaser—Bona Fide Purchaser—Knowledge.**

Knowledge by a purchaser of land that the grantor under whom the vendor claims is in possession thereof is not such knowledge as to put the purchaser upon inquiry as to the title of such grantor.

**3. Mortgages — Bona Fide Purchaser—Knowledge—Evidence.**

The evidence in this case carefully examined, and found that the weight thereof is against the conclusion of the court that: "The F. B. Collins Investment Company making the loan, had such knowledge of facts as should have put it upon inquiry, which inquiry, followed up, would have given it notice of the fraud perpetrated in the sale of the property by W. M. Waide, as guardian of Harold L. Waide, to Roy E. Burks."

**4. Holder In Due Course—Statute.**

When it is shown that the title of any person who has negotiated a negotiable instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course.

(Syllabus by Collier, C.)

Error from District Court, Murray County; F. B. Swank, Judge.

Action by the F. B. Collins Investment Company against Thomas N. Jenkins and Leore L. Jenkins, and action by Harold L. Waide, a minor, by H. G. Butts, guardian, against W. M. Waide, Roy E. Burks, Lenoir L. Burks, Thomas N. Jenkins, the F. B. Collins Investment Company, and Henry C. Block, trustee. Cases consolidated and tried together and judgment against Thomas N. Jenkins in favor of the F. B. Collins Investment Company, canceling proceedings in county court in regard to the sale of the land in controversy, the guardian's deed to the purchaser, and the purchaser's deed to Thomas N. Jenkins, and the mortgage by Thomas N. Jenkins to the Investment Company. The Investment Company's motion for a new trial was overruled, and the Company and Henry C. Block, trustee, bring error. Reversed and remanded, with instructions to modify the judgment, and, except as to such modification, affirmed.

A. E. Pearson and W. R. Withington, for plaintiffs in error.

Pyeatt & Butts and Blanton & Andrews, for defendants in error.

Opinion by COLLIER, C. The F. B. Collins Investment Company, a corporation, hereinafter styled plaintiff, filed its action against Thomas N. Jenkins and Leore L. Jenkins, hereinafter styled defendants, to recover upon notes aggregating the sum of $457.26, and interest thereon, and $50 attorney fee, and for a foreclosure of a mortgage given by Thomas N. Jenkins to the said F. B. Collins Investment Comany, to secure payment of said notes, the foreclosure of said mortgage to be foreclosed subject to a prior mortgage given by the said Jenkins to the F. B. Collins Investment Company, and by said Investment Company assigned to Henry C. Block, trustee, the said mortgage being to secure the payment of $1,900. Thereafter Harold L. Waide, a minor by his next friend, filed an action against W. M. Waide, Roy E. Burks, Lenoir L. Burks, Thomas N. Jenkins, the F. B. Collins Investment Company, and Henry C. Block trustee, asking for the cancellation of the guardian's deed from W. M. Waide to Roy E. Burks and cancellation of deed from Roy E. Burks and Lenoir L. Burks to Thomas N. Jenkins, to the F. B. Collins Investment Company, said deeds and mortgage being upon the lands involved in this litigation. By agreement the said two cases were consolidated and tried together. The case was tried to the court, and the following findings made:

"That the guardian's deed executed by W. M. Waide as guardian of Harold L. Waide, and approved by the county court of Garvin county, covering the lands in controversy situated in Murray county, Okla., was without consideration, and there was collusion between Roy E. Burks and the guardian, W. M. Waide, for the purpose of defrauding plaintiff out of said property.

"The court further finds that the deed from Roy E. Burks and wife, Lenoir Burks, to Thomas N. Jenkins, covering the lands in litigation, is also void and without force and effect, because Thomas N. Jenkins was a party to said collusion and knew of the same, and said deed to Thomas N. Jenkins is hereby declared void and vacated from the records, and the same is hereby ordered canceled as fully as though it had never been executed.

"The court further finds that the mortgage sued on by the F. B. Collins Investment Company, in case 1039, which case was consolidated with the one on trial, should be canceled, held for naught, and is hereby canceled and held for naught, and

the same is declared invalid and without force and effect.

"The court further finds that the mortgage of $1,900, executed by Thomas N. Jenkins on the land in litigation, in favor of the F. P. Collins Investment Company, was assigned by the F. B. Collins Investment Company to the defendant Henry C. Block, trustee, should be canceled, held for naught, and be held invalid, and the property revested in the plaintiff, clear of all incumbrances of any kind whatsoever so far as the interest of the defendants is concerned.

"The court further finds from the evidence in this case that O. W. Jones was never, during the negotiations of said loan by the F. B. Collins Investment Company and Thomas N. Jenkins and Roy E. Burks, the agent of the F. B. Collins Company; that the F. B. Collins Investment Company actually paid out $1,900, the amount of the loan which is represented by the mortgage assigned to Henry C. Block. trustee herein, and that said money paid out on said loan, supposed to be paid to Thomas N. Jenkins was finally transferred and turned over to W. M. Waide, guardian of the plaintiff.

"The court further finds that no part of the mortgage of the F. B. Collins Investment Company, or any part of the mortgage held by Henry C. Block, trustee, has ever been paid.

"The court further finds that said mortgage was made in good faith by the F. B. Collins Investment Comany, without actual notice of fraud, but it is the judgment of the court from the testimony that the F. B. Collins Investment Company had knowledge of such facts as should have put them on inquiry, followed up, would have given them notice of the fraud perpetrated in the sale of the property by W. M. Waide. as guardian of Harold L. Waide, to Roy E. Burks.

"The court further finds that the probate proceedings had in the county court of Garvin county, Okla., in which W. M. Waide sold the property of Harold L. Waide, plaintiff herein, were regular on their face, and in every respect complied with the law, but finds that the said proceedings do not recite the truth as to the transactions that actually occurred."

"The court further finds that the plaintiff, through his guardian, is suing in the district court of Garvin county, Okla., W. M. Waide and Western Indemnity Company, a corporation, to recover under said bond a reasonable value of the land sold by said guardian.

"To all of said findings as to the F. B. Collins Investment Company and Henry C. Block, trustee, the F. B. Collins Investment Company and Henry C. Block except."

The court rendered judgment against Thomas N. Jenkins in favor of the F. B. Col-lins Investment Company for the amount of $543.95, and $50 attorney fee, and interest at 8 per cent. per annum, payable annually from date, and canceled and held for naught the proceedings in the county court in regard to the sale of the land in controversy, the deed of the guardian to the purchaser at said sale, and the deed of the purchaser at said sale to Thomas N. Jenkins and the mortgage executed by Thomas N. Jenkins to the F. B. Collins Investment Company. Thereafter the F. B. Collins Investment Company within the time provided by law, made a motion for a new trial, which was overruled and excepted to, and error brought to this court.

The evidence in this case clearly sustains the finding of the court as to the fraud that was practiced upon the minor, whose lands were ostensibly sold by the guardian, who was his father; that there was collusion between Roy E. Burks and the guardian in regard to the sale of said lands; that Thomas N. Jenkins was a party to said collusion, and knew of the same; that the mortgage executed to the F. B. Collins Investment Company by Thomas N. Jenkins was without actual notice on the part of said company as to any fraud; that O. W. Jones was never, during the negotiations of said loan by the F. B. Collins Investment Company, Thomas N. Jenkins, and Roy E. Burks, the agent of the F. B. Collins Investment Company; that the F. B. Collins Investment Company actually paid out $1,900, the amount of the loan represented by the mortgage and assigned to Henry C. Block, trustee; that said money paid out was finally transferred and turned over to W. M. Waide, guardian of the minor, and that no part of said mortgage, of the F. B. Collins Investment Company, or any part of the mortgage held by Henry C. Block, trustee, has ever been paid; that the proceedings had in the county court of Garvin county, Okla., in which W. M. Waide sold the property of Harold L. Waide, were regular on their face, and in every respect complied with the law; but that the said proceedings do not recite the truth as to the transactions that actually occurred; "that the said minor is suing in the district court of Garvin county, Okla., through his guardian, W. M. Waide, and Western Indemnity, to recover under said bond a reasonable value of the land sold by said guardian."

As we view the matter the only important question involved in this appeal is: Is the finding of the court that "the F. B. Collins Investment Company had knowledge of such facts, as should have put it on inquiry,

which inquiry, followed up, would have given it notice of the fraud perpetrated in the sale of the property by W. M. Waide, as guardian of Harold L. Waide, to Roy E. Burks," supported by the weight of the evidence?

. The uncontradicted evidence in the case is that the witness W. M. Waide began negotiations for the loan by going to the investment company and talking the matter over with Mr. F. B. Collins; that Tompkins was an inspector of the F. B. Collins Investment Company, and that Waide met him at the train, when he (Tompkins) was on his way to inspect the lands; that the inspector, after inspecting the land in Garvin county, returned to Pauls, Valley, and met Mr. Burks; that an application for the loan was made by Thomas N. Jenkins to said F. B. Collins Investment Company; that the application was in writing, and minutely described the property and everything in connection therewith, including the statement that the property was not occupied by a tenant; that the land in controversy was purchased in 1911; that he (Jenkins) paid cash for the same in the sum of $5,807.07, and stated that he (Jenkins) was in possession of the land in controversy; that his title thereto had never to his knowledge been questioned or disputed; that he made these statements for the purpose of securing the loan, and solemnly declared the same to be true in every particular; that he suppressed no information, relative to the property as to the security, which would virtually affect its value, and appointing the F. B. Collins Investment Company his agent to procure the loan.

The uncontradicted evidence of Thomas N. Jenkins is that he did not know the lands in controversy; that he never lived on the land; that he never exercised any ownership or title or claim to the land; "that he had never seen it; that he never claimed any ownership, or title or claim to the land in controversy; that he had never paid anything to Roy E. Burks or to Whit Waide, or to any one for said described land; that with his knowledge and consent he had never become purchaser of the land; that he had no knowledge of the execution and delivery to him of a deed to said land; that no such deed was ever delivered to him; that at the time he executed the papers he was a single man; that he married in March, 1912; that he didn't get any money obtained upon the loan; that he didn't pay much attention to the execution of the papers; that he signed the papers in Mr. Jones' office; that the sig-

nature to the mortgage executed to the F. B. Collins Investment Company was his signature; that he never paid nothing for it; that he didn't borrow any money; that they used his name in getting it; that he never saw any of the officials of the F. B. Collins Investment Company; that he disremembered whether Mr. Burks or Mr. Jones asked him to sign the mortgage."

The defendant W. M. Waide testified that he did not recall that Thomas N. Jenkins was in possession of the land in controversy at any time; that he (witness) has been in possession and control of the land since it was filed, through his tenants; that no other person than himself controlled and managed the land; that he recalled the occasion of a loan being placed on this land in December, 1911; that Roy E. Burks never paid him any sum whatever for the deed executed by witness to him; that he never agreed or intended that he should; that he couldn't say, when negotiating the loan, that he did not tell Mr. Collins that Roy E. Burks owned the land. In reply to the question as to whether the witness had stated that the consideration was in hand paid to him and sworn to, he declined to answer, upon the ground that it might incriminate him. In reply to the question, "You made such affidavit didn't you?" he declined to answer, claiming exemption upon the ground that it might incriminate him. In reply to the question which witness was asked if he had sold said property to Mr. Burks, and did that return represent the truth at that time, witness replied, "I claim by exemption under section 21 of the Bill of Rights as my answer might have a tendency to incriminate me."

There was no evidence in the case that the F. B. Collins Investment Company had actual knowledge that the lands in controversy were not in possession of Jenkins, or any facts to put them upon inquiry as to same. There is not any evidence of any kind even tending to show that Henry C. Block, trustee, to whom the mortgage made by Jenkins was assigned, had any actual knowledge of any fraud in regard to the lands in controversy, or had any knowledge of any facts which made it his duty to inquire as to the title to said land.

It is earnestly contended by defendant that the fact that Jenkins made the F. B. Collins Company his agent to negotiate the loan; that shortly after the execution of the deeds to the purchaser at the guardian's sale the purchaser thereafter transferred the lands to Jenkins; that the first negotiations for the loan were by W. M. Waide; that the

fact that W. M. Waide had possession of the lands and was exercising actual ownership over them—were such facts as to put the F. B. Collins Investment Company upon inquiry as to the title to said land, and with this contention we cannot agree, and, further, cannot agree that, if such facts as were in possession of the F. B. Collins Investment Company had been followed up, it would have disclosed the outrageous fraud that had been perpetrated by the guardian and his coconspirators in the sale of said lands.

The evidence shows that the probate proceedings were regular in every respect; that the court approved the sale; that the guardian made a deed reciting receipt of the consideration; that the purchaser at the guardian's sale had conveyed the property to Jenkins; that the written application by Jenkins for the loan not only solemnly stated that Jenkins was in possession of the property, but stated the particulars of his purchase of the same, and the amount he paid in cash therefor.

While it is a fundamental principle of law that finding another other than a claimant in possession of land is such notice as to want of title on the part of the claimant as to put one upon inquiry, yet, had the fact been brought home to the F. B. Collins Investment Company that W. M. Waide was in possession of the land in controversy, which we do not hold, such knowledge would not have required the said company to investigate as to the title of Jenkins to said lands, inasmuch as Waide was the vendor through whom Jenkins claimed. And under the evidence in this case it is evident that the said fraudulent transaction would not have been disclosed by Waide if the said company had questioned him prior to making the loan.

The general rule as to the presumption arising from possession as to the ownership of land is subject to the exception that, where the possession is in the vendor of the claimant, the mere possession by the vendor does not require upon the part of the one dealing with the claimant as to his title to such land to investigate, as such possession of the vendor is not such knowledge as to put him upon inquiry as to the title of claimant to such land. In the case of Bloomer v. Henderson, 8 Mich. 404, 77 Am. Dec. 453, Mr. Justice Christiancy says:

"But the object of the law in holding such possession constructive notice, where it has been so held, is to protect the possessor from the acts of others, who did not derive their title from him, not to protect him against his own acts, and especially against his own

deed. If a party executes and delivers to another a solemn deed of conveyance of land itself, and suffers that deed to go upon record, he says to all the world, 'Whatever right I have, or may have claimed to have, in this land I have conveyed to my grantee; and, though I am yet in possession, it is for a temporary purpose, without claim of right, and merely as a tenant at sufferance to my grantee.' This is the natural inference to be drawn from the recorded deed, and, in the minds of all men, would be calculated to dispose with the necessity of further inquiry upon the point. All presumption of right, or claim of right, is rebutted by his own act and deed. One of the main objects of the registry law would be defeated by any other rule."

In the case of Hockman v. Thuma, 68 Kan. 519, 75 Pac. 486, it is held:

"Possession of real estate by the grantor in a warranty deed does not impart notice to a purchaser from the grantee of secret equities existing in favor of the person occupying the land. The possession in such case by one who has conveyed the land indicates that he is holding the premises for a temporary purpose only, as a tenant at sufferance of his grantee." McNeil v. Jordan, 28 Kan. 7.

In Curry v. Williams (Tenn.) 38 S. W. 278, the syllabus is as follows:

"After complainants' prospective son-in-law had induced them to give him an absolute deed to certain land for the purpose of raising money to enable him and complainants' son to start in business, he conveyed the land in fee, and on the next day the vendee mortgaged the property to procure a loan, the proceeds of which he turned over to his vendor, who appropriated the same, and fled the country, without keeping his promise to complainants. When the mortgage was given, complainants were occupying the land, but the mortgagee was informed by the mortgagor that they were in possession as tenants. Held, that complainants' possession was not notice to the mortgagee of any adverse claim on their part arising out of their vendee's fraud."

In the case of Exon v. Dancke, 24 Or. 110, 32 Pac. 1045, it is held:

"Hill's Ann. Laws, § 3029, provides that when a deed purports to be an absolute conveyance, but is made defeasible by a deed of defeasance, the original conveyance shall not be defeated, as against any person other than the maker of the defeasance, or his heirs, without actual notice thereof, unless such instrument shall have been recorded. Held, that the continued possession by the grantor of land was not notice of an unrecorded defeasance held by him."

In the body of the opinion on pages 1046

and 1047 of 32 Pac., on page 114 of 24 Or., the court said:

"But we are of the opinion that the reason, as well as the decided preponderance, of the authorities, is to the effect that a purchaser from a vendee, whose vendor remains in possession, is not bound to inquire further as to the title, when he finds on record a deed from such vendor, properly conveying the title to the person from whom he is about to purchase. Any inquiry suggested by such possession is fully answered by the record, and is prosecuted sufficiently far when the examination of the record discloses a deed from the person in possession to the person who offers to sell, and who is claiming and asserting title under such deed. In Massachusetts, under a statute similar to that of this state, the Supreme Court has repeatedly held that the open and notorious possession by the grantor will not be sufficient to impart notice to the purchaser of an unrecorded defeasance." Pomroy v. Stevens, 11 Metc. (Mass.) 244; Hennessey v. Andrews, 6 Cush. 170; Newhall v. Pierce. 5 Pick. 450; Parker v. Osgood, 3 Allen, 487; Lamb v. Pierce, 113 Mass. 72.

See, also, Dodge v. Davis, 85 Iowa, 77, 52 N. W. 2; Van Keuren v. Railroad Co., 38 N. J. Law, 167; Cook v. Travis, 20 N. Y. 400.

In Dodge v. Davis, 85 Iowa, 77, 52 N. W. 2, it is held:

Where the owner conveys land to another the fact that he continues in possession is not notice to a purchaser from his grantee of any right he may have reserved."

In the body of the opinion it is said:

"We think the evidence shows that he had prior thereto abandoned the land after making the deed to Gourley, but, if he had not done so, he could not claim that his possession, or the circumstances was constructive notice to the plaintiff of his rights, if he had any. Having given a conveyance of the land to Gourley, defendant's occupancy of the premises would impart no notice to plaintiff of any right reserved in himself. The presumption would be that the possession defendant retained after he executed the deed to Gourley, was a mere holding over at will until it suited his convenience to move or to surrender possession" (citing several authorities).

The evidence fully discloses that a fraudulent combination was entered into to secure the loan made by the said the F. B. Collins Investment Company to Jenkins, and it can hardly be imagined that, if an investigation prior to making the loan had been entered into, the conspirators, or any one of them, would have divulged the wrong perpetrated by them, even if there had been facts, which we do not hold, to put the said company upon inquiry. While, as previously stated, possession of the land by another than the party seeking to alienate or incumber it is, as a general rule, such fact as to put a person upon inquiry as to the title of such land, this rule is subject to the exception, as above stated, that, where the possession is in one under whom the claimant claims, it is not such knowledge of a fact as to put the party seeking to incumber or purchase the lands upon inquiry. There is no evidence whatever that, prior to making the loan to Jenkins, the F. B. Collins Investment Company had any actual knowledge of the possession of said lands by Waide, or knew any fact to put it upon inquiry in regard to the same. In 21 American and English Encyclopedia of Law (2d Ed.) p. 585, the author says:

"No general rule can be formulated which will govern in all cases the sufficiency of the facts or circumstances that make a person's duty to inquire, but each case must rest on its own facts. A few guiding principles, however, have been recognized by the courts, and are here discussed. It may be premised that the means of knowledge must be available and of such a character that a prudent man might be expected to take advantage of them. There must appear in the nature of the case such a connection between the facts discovered and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. Circumstances that are dubious or equivocal are not sufficient to take the place of actual notice."

In 2 Pomeroy's Equity Jurisprudence, p. 1010, the author says:

"Whenever a party has information or knowledge of certain extraneous facts, which of themselves do not amount to, nor tend to show an actual notice, but which are sufficient to put a reasonably prudent man upon an inquiry, respecting a conflicting interest, claim, or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth, to a knowledge of the interest, claim, or right which really exists, then the party is absolutely charged with a constructive notice of such interest, claim, or right."

In Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209, it is said:

"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received; but no bad faith or notice can be imputed to a purchaser, where the evidence discloses

that, had inquiry been made, no knowledge or notice would have been actually received."

In the body of the opinion, on page 215 of 117 Pac., on page 687 of 27 Okla., the court said:

"It is also insisted that the condition of the records showing the title of the land, in the office of the register of deeds, was such as to have put intending purchasers upon inquiry; that the recording of the escrow deed, followed subsequently by the recording of the settlement deed, all being transactions conducted between a mortgagor and mortgagee, and all disclosed by the record, created a condition which precluded the defendants in error from taking as innocent purchasers. Conceding these facts to be true, and accepting them with all the consequences insisted on by counsel, yet, in our judgment, it would not establish the proposition which they urge. The condition of the record in itself disclosed nothing fraudulent; the most that is contended for it is that it should have prompted inquiry, and that the lot claimants were bound by the things which they would have learned, had they made such inquiry. Viewing it, then, from this standpoint, we find that the land was platted into blocks and lots, August 14, 1901, and that lot claimants' rights attached between that date and the time when the action was filed. Mrs. Herbert testified that she did not know of any right which she possessed in and to this land until she talked with her lawyer in the spring or early summer of 1903, 'just previous to filing this suit,' all of which being true, any inquiry made on the part of the lot claimants, prompted by the condition of the records, would have resulted in no information whatsoever, for Mrs. Herbert herself had none that she could give. She may have believed, and doubtless did, that she had been overreached, but that she had a remedy was unknown to her, and necessarily it was likewise unknown that she would ever pursue it. The fraud upon which was predicated her right to relief was not evidenced by the record, but arose from personal transactions between her and her grantee. Hence we concur in the conclusion reached by the referee and the trial court on this point. The rule adopted by this court on this question is laid down in the case of Cooper v. Flesner et al., 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180 [20 Ann. Cas. 29], as follows: 'One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the "actual notice" he would have received.' As we have seen, however, even if the record was sufficient to have put the lot purchasers upon inquiry, and had

then prosecuted the same with diligence, it would have led to no actual notice of any rights claimed adversely to their grantor, for the reason as stated, Mrs. Herbert did not know of her rights.".

In Hass v. Gregg, 52 Okla. 51, 152 Pac. 1126, it is held:

"While it is the general rule that open and notorious possession of real estate, under an apparent claim of ownership, is notice to the world of whatever claim the possessor asserts, there is an exception to this rule, in that it does not apply to a vendor remaining in possession so as to require a purchaser from his grantee to inquire whether he had any interest in the land conveyed."

In the body of the opinion it is said:

"The rule of this court is well stated by Justice Kane in Adams v. White, 40 Okla. 535, 139 Pac. 514, as follows: 'The possession of real property carries with it the presumption of ownership, and it is the duty of those purchasing such property from others than those in possession to ascertain the extent of their claims; and the open, actual possession of such property gives notice to the world of just such interest as the possessor actually had therein.' But counsel for defendant contends that this general rule does not apply to a vendor remaining in possession, so as to require a purchaser from his grantee to inquire whether the grantor, remaining in possession, has any interest in the land conveyed. It must be admitted that the exception contended for by the defendant is well recognized and approved not only by this court, but by the courts of this country generally, so far as we have been able to ascertain."

It was contended by the defendant:

"That the sale through the probate court was void, as distinguished from voidable, because the guardian never received the purchase money; and the trial court was of the opinion that the guardian's deed was void, and that no title passed to the purchaser or his vendee, and that he would therefore transfer none to plaintiffs in error."

Responding to such contention, we are of the opinion that there is no merit therein. That we are correct in this conclusion is shown by the opinion of Judge Hardy in the case of Allison v. Crummey, 64 Okla. 20, 166 Pac. 691, in the body of which opinion it is said:

"Plaintiffs contend that the sale is void because: (1) The purchase price was not paid in cash before delivery of deeds. * * * If the view of the plaintiffs be correct, then it would be equally true that no rights would vest where the guardian embezzles the moneys received by him for the sale of his ward's lands for in that case the estate of the ward receives no benefit, and if the fact

that the estate of the ward is not benefited be made the test, then it would make no difference whether the land was sold with the understanding that it should not be paid for, or that the guardian failed to collect, or embezzled or misappropriated the consideration received therefor. Where a purchaser at a guardian's sale actually pays the consideration, the fact that the guardian may misapply the same and the estate of the ward receive no benefit from the sale will not defeat the title acquired by the purchaser, if he be innocent himself of any participation therein or wrongful knowledge thereof. * * * A sale of real estate belonging to an estate, by an administrator or guardian, made in violation of his trust and of the order of court authorizing the sale, is not in the strict sense void, but voidable, and the invalidity of such sale is made to depend, not on the fact that the estate received no benefit, but on the fact that the purchaser was a guilty participant in the wrongful sale, and that his title might be assailed upon the theory that he ought not, in equity and good conscience, profit by his wrongful conduct or by acts of which he had guilty knowledge."

In the case of United States v. Detroit Timber & Lumber Co. et al., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499, the following language is used:

"A chancellor will not be astute to charge a constructive trust upon one who has acted honestly and paid a full and fair consideration without notice or knowledge. On this point we need only refer to Sugden on Vendors, p. 622, where he says: 'In Ware v. Egmont, 4 De G. M. & G. 460, the Lord Chancellor Cranworth expressed his entire concurrence in what, on many occasions of late years, had fallen from judges of great eminence on the subject of constructive notice, namely, that it was highly expedient for courts of equity to extend the doctrine. When a person has not actual notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he ought to have acquired it, but for his gross negligence in the conduct of the business in question. The question, then, when it is sought to affect a purchaser with constructive notice, is not whether he had the means of obtaining, and might, by prudent caution, have obtained, the knowledge in question, but whether not obtaining was an act of gross or culpable negligence."

While it is unnecessary for a proper review of this case, we think it not improper to say that we have not overlooked the contention, earnestly insisted upon by plaintiffs, "that even though it was the duty of the F. B. Collins Investment Company to have made inquiry and hence they are not innocent purchasers, in the absence of proof of actual knowledge of the fraud or knowledge, of facts to put the assignee of said mortgage upon inquiry, which, if followed up, would have disclosed the fraud practiced in the sale of said lands, the mortgage to said assignee should be upheld." With this contention we cannot agree for the reason that the answer of said Henry C. Block, trustee, fails to allege that he acquired said mortgage prior to maturity in due course and for value, and there is no evidence whatever in the record, so far as we have been able to find, to show that he did acquire the said mortgage prior to maturity in due course and for value.

Section 4109, Rev. Laws 1910, provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." Lambert v. Smith, 53 Okla. 606, 157 Pac. 606.

We are of the opinion that the conclusion of the court that the F. B. Collins Investment Company had notice of facts which charged them with inquiry, and that the inquiry, if followed up, would have disclosed the fraud perpetrated in the sale of the land, is clearly against the weight of the evidence, and the court committed reversible error in adjudging that the mortgage executed by Thomas N. Jenkins to the F. B. Collins Investment Company, and by said company transferred and assigned to Henry C. Block, trustee, and the mortgage sought to be foreclosed in this action were void.

We are of the opinion that our holding in this case is not in conflict with the rules announced by this court in the case of Berry v. Tolleson et al., 68 Okla. 158, 172 Pac. 630, cited by defendants in error.

This cause is reversed and remanded, with instructions to the trial court, to modify the judgment rendered in this cause so far as to set aside that part of said judgment vacating and holding for naught the two mortgages executed by Thomas N. Jenkins to the F. B. Collins Investment Company, and to adjudge that the said two mortgages are each valid, and except as said modification thereof to be made, the said judgment is affirmed.

By the Court: It is so ordered.