## PLANT et al. v. SCHROCK.

No. 12112—Opinion Filed March 18, 1924.

Rehearing Denied June 24, 1924.

(Syllabus.)

1. **Guardian and Ward—Fraudulent Sale of Real Estate by Guardian—Setting Aside.**

A sale by a guardian of real estate belonging to his ward to his sister-in-law through the interposition of a third person, with the secret understanding that the purchaser not pay for the same and for the purpose of procuring a loan thereon, constitutes a fraud on the estate of the minor and may be set aside against the parties to the fraud and any person not a bona fide purchaser for value, but such sale is not void.

2. **Same—Bona Fide Purchasers—Record—Duty of Inquiry.**

A purchaser of property sold under circumstances stated above is charged with constructive notice of all facts disclosed by the record and with implied notice of such facts as would have been revealed by such inquiry as a reasonably prudent man would have made after such actual notice as would put a prudent person on inquiry or after being charged with such actual notice by the record, but otherwise no duty to make inquiry existed.

3. **Same.**

The law does not put a party upon inquiry, except where the facts are such as would naturally put a prudent person upon inquiry and would, if prosecuted with the diligence of an ordinarily prudent man, lead to a discovery of the fraud.

4. **Same—Fraudulent Sale—Innocent Purchasers of Mortgage.**

The property in the instant case was purchased by Tom Campbell and thereafter conveyed to Sallie Williams, a sister-in-law of the guardian and a member of his family. The sale was made as a result of a secret conspiracy on the part of the guardian, Tom Campbell, and Sallie Williams, without the purchase price being paid and for the purpose of placing the legal title in Sallie Williams, so that a loan might be procured thereon. The order confirming the sale was made February 28, 1914; guardian's deed was executed to Tom A. Campbell on March 31, 1914, and recorded April 7, 1914; Tom A. Campbell executed a warranty deed to Sallie Williams on April 1, 1914. On March 21, 1914, Sallie Williams executed a mortgage on the land to Holmes Sons and procured a loan of $2,400 thereon, which mortgage and the notes secured thereby were purchased before maturity by defendants, who paid value therefor and had no knowledge of the fraudulent sale of the property. Held, that the knowledge of the defendants of the above facts, with which they were charged, was not such as to place a reasonably prudent person on inquiry, which if pursued with reasonable diligence would have led to actual knowledge of the fraud, and the sale cannot be avoided as to such defendants.

5. **Mortgages—Validity — Mortgagee's Duty of Inquiry as to Adverse Possession.**

Knowledge by a mortgagee that the grantor under whom the mortgagor claims is in possession thereof, is not such knowledge as to put the mortgagee upon inquiry that the possession was hostile or adverse.

Error from District Court, Grady County; Will Linn, Judge.

Action by Lannis William Schrock against L. E. Plant and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

I. R. McQueen and Stephen C. Treadwell, for plaintiffs in error.

Bailey & Hammerly, for defendant in error.

COCHRAN, J. In 1914, L. L. Schrock, the regularly appointed guardian of Lannis William Schrock, a minor, sold a portion of the lands belonging to said minor through the county court of Grady county. A guardian's deed was executed to Tom Campbell, who thereafter conveyed the land by warranty deed to Sallie Williams, and Sallie Williams thereafter executed a mortgage on said lands to Holmes Sons, which mortgage was assigned by Holmes Sons to L. E. Plant and William L. Gilbert Home, a corporation. This mortgage was foreclosed in 1917, and

the property sold at sheriff's sale and L. E. Plant and William L. Gilbert Home, a corporation, purchased the property at said sale.

This suit was instituted by the guardian of Lannis William Schrock to recover said lands on the ground that the guardian's sale of said land was fraudulently made and that the sale was made in pursuance of a conspiracy by Tom Campbell, Sallie Williams, and L. L. Schrock, the guardian of the minor, to place the title to said land in Sallie Williams, for the purpose of mortgaging the same, and that the sale was made without consideration.

The trial court found, in substance, that L. L. Schrock was the duly appointed guardian of Lannis William Schrock, and on December 20, 1913, filed a petition to sell the land in controversy, and that an order of sale was entered on January 24, 1914, directing the guardian to sell the land for cash in hand to the highest bidder. That thereafter the guardian filed his return reporting that he had sold said land to Tom A. Campbell for the sum of $3,200. On February 28, 1914, this sale was confirmed, and the order of confirmation was filed of record in the office of the county clerk on March 31, 1914. The court found that Tom A. Campbell did not pay the purchase price for said land and that the said Campbell was acting as a pretended purchaser for the guardian of L. L. Schrock: that Campbell was never at any time in possession of the land and did not exercise any act of ownership over said lands; that the guardian's deed was dated and delivered to Thomas A. Campbell March 31, 1914. That Thomas A. Campbell executed a deed to said lands to Sallie Williams on April 1, 1914. That Sallie Williams was a sister-in-law of the guardian, L. L. Schrock, and a member of his family, and had been for 19 years. Sallie Williams never paid the purchase price nor any part thereof for said lands and took the legal title thereto at the request of the guardian, and that Sallie Williams was never at any time in possession of said lands. That Sallie Williams executed a mortgage on said land to R. E. Holmes Sons on March 21. 1914, for the purpose of securing a loan of $2,400. That before the maturity of said indebtedness, L. E. Plant and William L. Gilbert Home, a corporation, purchased the notes secured by such mortgage and obtained an assignment of the mortgage. That L. E. Plant and William L. Gilbert Home sued to foreclose said mortgage, but that the plaintiff was not a party to the foreclosure suit and that the judgment rendered therein was not binding on the plaintiff. That Lannis W. Schrock has at all times mentioned been in the open, notorious, and adverse possession of said lands, claiming and asserting title to the same, and that his legal guardian has at all times collected the rents therefrom. Having made such findings of fact, the trial court concluded that the guardian's sale was the result of the conspiracy between the guardian and Sallie Williams and was fraudulent and voidable and that the burden of proof was on the defendants to show themselves to be innocent purchasers for value and without notice, and that they had failed to overcome the burden of proof, and that the defendants had notice of such facts that would put an ordinarily prudent person upon inquiry, and that if such inquiry had been pursued it would have led to knowledge of the fraud, and that said purchasers are not innocent purchasers without notice. Judgment was thereupon entered canceling the various conveyances under which the defendants claimed title and quieting the title in the plaintiff. From this judgment so rendered, the defendants have appealed.

There is no doubt about the correctness of the finding of the trial court, that the guardian's sale was the result of a secret conspiracy on the part of the guardian and Tom Campbell and Sallie Williams, and that the sale was made without considerations, and for the purpose of placing the legal title in Sallie Williams, so that a loan might be procured thereon. The sale, therefore, was voidable and could be set aside against the parties to the conspiracy and any other person or persons who were not bona fide purchasers for value. Langley v. Ford, 68 Okla. 83, 171 Pac. 471; Brooks v. Tucker, 82 Okla. 255, 200 Pac. 168; Berry v. Tolleson, 68 Okla. 158, 172 Pac. 630; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Winsted v. Shaw, 68 Okla. 269, 173 Pac. 1041; Collins Inv. Co. v. Waide, 70 Okla. 191, 173 Pac. 835.

The defendants in this case purchased the notes and mortgages in good faith and paid full value therefor, and they had no actual notice of the fraud which had been perpetrated on the minor. There are only two questions to be determined in order to ascertain whether the findings and judgment of the trial court are sustained by sufficient evidence. It is first contended that the burden of proof was upon the defendants to establish the defense of bona fide purchaser, and that in order to establish this defense it was necessary to prove that the purchase was made for a valuable consideration and without notice of the fraud. In the cross-examination, the defendants stated that no investigation was made by them as to the title to the mortgaged premises, and that

they relied upon the investigation which had been made by Holmes Sons. It is contended by the plaintiff that, although the defendants testified that they had no notice of the fraud or of any defect in the title, such testimony was not sufficient to overcome the burden of establishing the defense of bona fide purchaser, as no testimony was introduced to show that Holmes Sons had no actual knowledge of the defects in the title or of the fraud which was perpetrated. It is contended that Holmes Sons was the agent of the defendants in making the investigation and that knowledge received by such agent would be knowledge of the principals. The fallacy of this contention is that there is no evidence in the record showing that Holmes Sons was the agent of the defendants. The defendants were investors who purchased the notes and mortgages from Holmes Sons, which was a reputable loan company. The fact that they made no investigation of the title, but were willing to rely upon the investigation which had been made by the loan company, did not constitute the loan company an agent for the investors, and it was not necessary for the defendants to prove that Holmes Sons had no notice of the defect in the title. They were charged with constructive notice of all facts disclosed in the record, and with implied notice of such facts as would have been revealed by such inquiry as a reasonably prudent person would have made after having such actual knowledge as would put a reasonably prudent person on inquiry, or after being charged with such actual notice by the record, but otherwise this duty to make inquiry did not exist.

The second question is whether the evidence was sufficient to support the finding of the trial court, that the defendants had notice of such facts as would put an ordinarily prudent person upon inquiry, and, if such inquiry had been pursued, it would have led to actual notice of the fraud. Facts and circumstances, to constitute notice, in the absence of actual notice of the fraud. must be such as to put a reasonably prudent man upon inquiry, and that inquiry suggested to an ordinarily prudent man must have been such that if pursued with reasonable diligence, would have led to actual notice of the fraud. In the instant case Sallie Williams was a sister-in-law of the guardian and had been a member of his household for 19 years, but the defendants had no knowledge or notice of this fact, and there was nothing in the guardianship records or in the instruments on file in the office of the register of deeds in connection with this title to disclose that fact or to cause them to suspect the same. The only facts appearing in the guardianship proceedings and from the records in the county clerk's office, with which the defendants were charged with notice, were the following:

"The order confirming the sale was made on Feb. 28th, 1914, and was recorded on March 31st, 1914. The guardian's deed was dated and acknowledged March 31st, 1914, and recorded on April 7th, 1914. The guardian's deed was executed to the purchaser at the guardian's sale, Tom A. Campbell. Campbell executed a warranty deed to Sallie Williams on April 1st, 1914. On March 21, 1914, Sallie Williams executed the mortgage on the land to Holmes Sons, which mortgage is now owned by the defendants."

What inquiry would have been suggested to an ordinarily prudent man by this record? Is there anything in this record to make an ordinarily prudent man suspect that a fraudulent sale had been made, and cause him to make inquiry to that end? The only inquiry suggested by the failure to record the guardian's deed to Campbell and the deed from Campbell to Sallie Williams until April 7th would be to ascertain whether any deed in fact had been executed conveying title to the person applying for the loan and to see that such deeds were recorded prior to any other instruments affecting the title to the property. It is nothing unusual for instruments not to be recorded for some time after they are executed, and when the deeds were presented, which were regular in all respects, there was nothing to excite suspicion by reason of the same not having been previously recorded or to lead a prudent man to suspect fraud. It appears that Sallie Williams executed the mortgages to Holmes Sons eleven days prior to the execution of the deed from Campbell to her and ten days prior to the execution of the guardian's deed to Campbell, and it is contended that these facts were sufficient to require an inquiry. In this connection it must be remembered that the sale was made to Campbell sometime prior to February 28th, and the order of confirmation was made on the 28th day of February, which was 21 days prior to the time the notes and mortgage were executed. Had Campbell executed a mortgage between the date of confirmation and the date of execution of the guardian's deed, such fact would have suggested to a prudent man an investigation to require that a guardian's deed be executed in accordance with the order of the court before completing the loan, but if the guardian's deed was then executed, there would be nothing to the transaction to suggest fraud. The fact that, between the date of confirmation and the time the guardian's deed was executed and delivered, the purchaser should mortgage, sell, or otherwise

handle the same as his own is not a suspicious circumstance, as he had a right to expect the guardian to comply with the order of the court. In this case the mortgage, however. was not executed by the purchaser at the guardian's sale, but was executed by Sallie Williams, to whom a deed was executed by Campbell on April 1st. What we have said above applies also· to this situation, as the fact that Campbell might have sold the property to Sallie Williams 21 days after the sale was confirmed to him and that she executed a mortgage thereon prior to receiving her deed, was not a suspicious circumstance. If Campbell had purchased the property in good faith at the guardian's sale, and had in turn contracted to sell the property to Mrs. Williams on March 21st, and she in turn had desired to procure a portion of the purchase price by mortgaging said property, the reasonable thing to have done would have been to handle the matter in just the manner in which it was handled in the instant case. Campbell would not care to execute his deed to Sallie Williams until after the guardian's deed had been executed and delivered to him, so it was not a suspicious fact that he waited until after the execution of the guardian's deed before executing the deed to Sallie Williams. It is true that in the instant case the transaction was not in good faith and was for the purpose of perpetrating a fraud, but the question with which we are concerned is whether the facts appearing from the record were such as to place a reasonably prudent person upon inquiry ·as to such fraud. We are of the opinion that the facts disclosed by the record were not such as to create a suspicion of fraud in the mind of even an experienced title examiner, and certainly are not sufficient to create a suspicion of fraud in the mind of an ordinary man purchasing the property- or making a loan thereon.

The law does not put a party upon inquiry, except where the facts are such as would naturally put a prudent person upon inquiry and would, if prosecuted with the diligence of an ordinarily prudent man, lead to a discovery of the fraud. Allison v. Crummey, 64 Okla. 201, 166 Pac. 691, and Bynum v. Moore, 101 Okla. 128, 223 Pac. 687, are not in conflict with the views herein expressed. In each of those cases the subsequent purchasers were charged with notice of the fraud, but those facts are materially different from the facts in the instant case. In the first case, the mortgage was executed prior to confirmation and the agent had actual knowledge of the fraud; in the second case, a mortgage was executed prior to confirmation to the father of the minor, which covered other lands and secured a large note, which would excite suspicion as to the nature of the transaction between the purchaser at the guardian's sale and the mother and father of the minor, by which the minor's property was being mortgaged to the father one day after the sale.

It also appears that an inquiry, if made in the instant case, would have been fruitless, and for that reason the defendants cannot be charged with notice of the fraud. The guardian, Campbell, and Sallie Williams were the only parties who knew of the conspiracy. Even the attorneys for the guardian had no knowledge that the sale was not being made in good faith. It further appears that the purported sale was being made with the secret understanding that it was for the purpose of placing the title in Sallie Williams in order to procure a loan thereon. Now can it be said that, if the loan company from whom the loan was sought as a part of this conspiracy had made inquiry, it would have discovered the fraud? A necessary part of the conspiracy of the parties was to conceal from the loan company the existence of the fraud, unless the loan company or its agent was a party to the fraud, and that is not contended in this case. A similar situation was presented in Collins v. Waide, supra, and the court said:

"* * * And it can hardly be imagined that, if an investigation prior to making the loan had been entered into, the conspirators, or any one of them, would have divulged the wrong perpetrated by them, even if there had been facts, which we do not hold, to put the company upon inquiry."

It is contended, however, that the minor has at all times been in the open, notorious, and adverse possession of the lands, and that the mortgagee took said mortgage with knowledge of the right of the person in possession and that this fact is sufficient to charge the defendants with notice of the fraudulent transaction. The same question was presented in Collins Inv. Co. v. Waide, supra, and the court said:

"Knowledge by a purchaser of land that the grantor under whom the vendor claims is in possession thereof, is not such knowledge as to put the purchaser upon inquiry as to the title of such grantor."

In the body of the opinion, it is said:

"While it is a fundamental principle of law that finding another than a claimant in possession of land is such notice as to want of title on the part of claimant as to put one upon inquiry, yet had the fact been brought home to the F. B. Collins Inv. Co. that W. M. Waide was in possession of the land in controversy, which we do not hold, such knowledge would not have required the said company to investigate as to the title of Jenkins

as to said land, inasmuch as Waide was the vendor through whom Jenkins claimed. And under the evidence in this case, it is evident that the said fraudulent transaction would not have been disclosed by Waide had the said company questioned him prior to making a loan. The general rule as to the ownership of land is subject to the exception that where the possession is in the vendor of the claimant the mere possession by the vendor does not require upon the part of the one dealing with the claimant, as to his title to such land, to investigate, as such possession of the vendor is not such knowledge as to put him upon inquiry as to the title of claimant in such land."

In Riddle v. Keechi Oil & Gas Co., 74 Oklahoma, 176 Pac. 737, the court said:

"The authorities cited in the case clearly establish that the assignee of this lease was authorized to deal with the record owner as the true owner of the property, and the possession of Berry, the grantor, was not sufficient to put him upon inquiry as to the title of the grantee."

In Wolverine Oil Co. v. Parks, 79 Okla. 318, 193 Pac. 624, the court said:

"Up until that time there had been no act on the part of Margaret Parks inconsistent with the Preistly deed further than her possession. In the case of Grayson v. Herd, 55 Fed. 724, it was held that while the grantor was holding over and this holding was open, notorious, visible, and known generally to the people of the vicinity, it was not sufficient to put the grantee on notice that her possession was hostile or adverse."

Following the rule announced in the above cases, we conclude that the possession of the minor through his guardian, which continued after the guardian's sale just as it had before, was not sufficient to require the defendants to make inquiry which would have led to a discovery of the fraud.

It is our opinion that the judgment of the trial court should be reversed, and the cause remanded, with directions to render judgment for the defendants quieting their title to the lands in controversy, and that plaintiff take nothing by said action, and it is so ordered.

JOHNSON, C. J., and NICHOLSON, MASON, and WARREN, JJ., concur.