KING et al. v. LANE. (No. 903.)*

(Court of Civil Appeals of Texas. Amarillo. May 3, 1916. Rehearing Denied May 24, 1916.)

1. DEEDS ⊕112(2)—DESCRIPTION—REFERENCE TO MAP.

Though the map of an "addition" was not in the deed records of a county at the time of conveyance of a block therein, nevertheless title to the particular block vested in the grantee where the grantor, in describing the property in the deed, referred to the map, which designated the land after having been actually located and surveyed on the ground.

[Ed. Note.—For other cases, see Deeds, Cent. § 324; Dec. Dig. ⊕112(2).]

2. VENDOR AND PURCHASER ⊕232(1) — PURCHASE IN GOOD FAITH—INQUIRY—POSSESSION.

If another's possession of land is consistent with the record title, the purchaser is not bound to inquire concerning the title indicated by the possession, and a purchaser from a vendee whose vendor remains in possession is not bound to inquire further when he finds on record a deed from such vendor conveying the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540, 550, 551; Dec. Dig. ⊕232(1).]

3. VENDOR AND PURCHASER ⊕230(2) — RECORD—NOTICE.

A reconveyance, by deed describing the land according to an unrecorded map or plat of an "addition," made by the grantee to the grantor, did not impute notice to adverse parties of the grantor's new title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 505, 506; Dec. Dig. ⊕230(2).]

4. VENDOR AND PURCHASER ⊕232(3)—NOTICE OF ADVERSE TITLE—POSSESSION.

Possession of land by the original grantor thereof after reconveyance to him by the grantee was not notice to adverse parties of his title, unless they knew of his deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 544; Dec. Dig. ⊕232(3).]

5. TRESPASS TO TRY TITLE ⊕39(1) — EVIDENCE.

In suit by purchasers at sale to satisfy lien claimants to recover land reconveyed by the original purchasers' trustee to the original grantor thereof, who had reserved the right to have 3 acres upon repayment of a part of the purchase money, testimony as to the agreement, though not admissible as proof of title, was admissible as a relevant circumstance to show the authority of the trustee to reconvey, and that the reconveyance was in recognition of the previous oral arrangement made when the original grantor conveyed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. ⊕39(1).]

6. FRAUDS, STATUTE OF ⊕63(5)—AUTHORITY TO RECONVEY.

Parol authority from the buyers of land to their trustee to reconvey part to the grantor upon repayment of a proportionate part of the purchase price is not within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 101; Dec. Dig. ⊕63(5).]

7. RAILROADS ⊕111 — LIENS — WORKMEN — CONSTRUCTION—DISCHARGE.

Where town lands, equitable title to which was held by the bonus committee of a railroad, was sold by their trustee under their authority,

such land was discharged from the trust, so that grade workers for the railroad could not claim a lien thereon by virtue of the contract between the bonus committee and the railroad, but had to look to the money representing the lands.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 342–350; Dec. Dig. ☞111.]

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Suit by S. M. King and another against J. M. Lane. From a judgment for defendant, plaintiffs appeal. Judgment affirmed.

Moss & Leak, of Memphis, for appellants. J. M. Elliott, of Memphis, for appellee.

HENDRICKS, J. On the 19th day of May, 1909, the appellee, J. M. Lane, was the owner of the S. E. ¼ of the S. W. ¼ of section 20, block 20, Houston & Great Northern Railway Company survey, near the town of Memphis, situated in Hall county, Tex.; said land consisting of 40 acres, more or less. On that day he conveyed the land by general warranty deed, for the sum of $8,000, to "R. A. Dunbar, trustee for J. J. Mickle, J. A. Bradford, Charles Drake, and D. Browder, executive committee of the Memphis railroad bonus committee." At the time this deed was executed by Lane to Dunbar, as trustee, it was specifically agreed between Lane, the trustee, and the executive committee (representing said bonus committee) that Lane had the right of reservation of any 3 acres of land, to be thereafter selected by him, upon payment of a pro rata consideration, in accordance with the amount paid to him, and would receive a reconveyance of said 3 acres when so selected.

We infer from this record that at this time there was a projected promotion of a railroad designated as the Altus, Lubbock & El Paso Railroad, the contemplated route of which was through Memphis, Tex. On the 6th day of May, 1909, prior to the execution of the deed by Lane to Dunbar, the railroad bonus committee of Memphis, Tex., entered into an agreement with Edward Kennedy, who was the promoter of said Altus, Lubbock & El Paso Railroad, and the president of same, by the terms of which agreement the bonus committee obligated themselves to purchase certain lands in or adjoining the town of Memphis, the title of which was to be vested in a mutually selected trustee, the land to be sold "and the proceeds placed in the bank at Memphis, Tex., to be paid out on estimates for grading work on the roadbed of the Altus, Lubbock, Roswell & El Paso Railroad Company, in Hall county, Tex., as the work should progress continuously out of Memphis."

Kennedy, the president of said railroad, caused the civil engineer in charge of the company's affairs to map and plat the particular 40 acres of land, conveyed by Lane to Dunbar, trustee (in connection with other land) into lots, blocks, streets, and alleys, evidently for the purpose of sale. Kennedy,

as president of the railroad company, was fully cognizant of the arrangements between the executive and the bonus committees, and Lane, for a reservation and reconveyance to the latter of the 3 acres of land to be selected—Kennedy thereafter ratifying said agreement.

On the 15th day of June, 1909, R. A. Dunbar, as trustee for the executive committee (naming the members thereof in the deed) and for Ed Kennedy, the president of the road, in consideration of the sum of $407, paid by Lane, deeded to Lane "all that certain lot, tract or parcel of land described as * * * block No. 34, in Fairview addition to the town of Memphis, Texas." This consideration is shown to have been paid by Lane.

On June 4, 1910, in a suit in the district court of Hall county, Tex., in which the members of the bonus committee and the railroad and Kennedy were defendants, a lien was established upon the 40 acres conveyed by Lane to Dunbar, and upon other land, consisting of 80 acres, embodied in the same trust agreement, for the benefit of certain parties holding claims on account of having performed certain grade work upon the roadbed of the railroad company, and the land was ordered sold for the foreclosure of the particular lien mentioned, for the purpose of satisfying said claims.

J. B. Patterson, a master in chancery in said suit, reported a public sale of said property to the district court, which was confirmed by the district judge October 9, 1911, and the master, on the 10th day of October, 1911, deeded the land to Wilkerson, who thereafter on the 9th day of November, 1911, deeded the said 40 acres to S. M. King and R. S. Rose, the appellants herein, for a recited consideration in said deed of $7,000.

The map and plat of the Fairview addition, to Memphis, Tex. (in accordance with which block 34 of said addition was conveyed by Dunbar, trustee, to Lane), was not of record in the deed records of Hall county, Tex., at the time of said conveyance, though the land had been surveyed and staked into lots, blocks, streets, and alleys, and the plat made at the time of the deed.

On the 22d day of September, 1911, J. M. Lane, the appellee herein, recorded a plat of block 34, of said Fairview addition above mentioned, in the deed records of Hall county, designating the lots in said block and one street and an alley, as shown by this record; the instrument containing a dedication clause of said streets and alleys, to the use of the public.

[1] Though the map of the Fairview addition was not in the deed records of Hall county at the time of the reconveyance by Dunbar to Lane of block 34, we think the title to the particular property vested in Lane for the reason that Dunbar, in describing the property in his deed, referred to an

instrument (the map) which designated the land after having been actually located and surveyed upon the ground. King and Rose sued Lane for the land, and the trial court peremptorily instructed the jury to render a verdict in favor of Lane. The deed from Dunbar, as trustee, reconveying the 3 acres to Lane, was placed of record, prior to the time of the establishment of the lien above mentioned.

The trial court peremptorily instructed the jury in favor of Lane, the defendant, and appellee herein, for the 3 acres of land in controversy. When the land was sold at public vendue, by the master in chancery, Wilkerson had actual notice of the claim of Lane to that part of the land reconveyed to him, but said he would take his chances. Within a very few days he conveyed to King and Rose, both deeds having been placed of record the same day, and there is no testimony that the latter paid any consideration for the land to Wilkerson, on account of the conveyance to them.

Appellee seems to hang his case upon the doctrine of notice as afforded by the possession of Lane of the particular property, the fencing of the same by him, and the fact of the platting of the land shown by obvious stakes on the ground, aided by the dedication of Lane of block 34, with streets and alleys, to the public, of record a short time before the conveyance by the master in chancery.

[2-4] It is the settled rule in this state that if the possession by one of a piece of land is consistent with the record title, the purchaser is not bound to make inquiry concerning the title indicated by the possession, because no inquiry is suggested by it; and a purchaser from a vendee, whose vendor remains in possession, is not bound to inquire further when he finds on record a deed from such vendor conveying the title. Eylar v. Eylar, 60 Tex. 315; Alstin v. Cundiff, 52 Tex. 453; Smith v. Miller, 63 Tex. 72; Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258. The record shows that Lane had previously conveyed the 40 acres. The reconveyance by Dunbar as trustee, describing land according to a map or plat of an addition not of record, did not impute notice; and we are inclined to think that the possession by Lane of the property, unless an adverse party knew of his deed, would be considered as consistent with his former conveyance.

[5] The proposition is asserted by appellants King and Rose that there is no authority shown to Dunbar to reconvey the land to Lane. The proof is conclusive that Lane sold the 40 acres to the committee, with the agreement that he was to have 3 acres, thereafter to be selected by him, upon the repayment of a proportionate part of the purchase money. Though such testimony may not be admissible as proof of title, strictly speaking, however, we think it is admissible as a relevant circumstance, for the purpose of showing the authority of Dunbar to reconvey, taken in connection with other testimony by other witnesses, that said reconveyance was in reality in recognition of the previous oral arrangement, when Lane conveyed the land to Dunbar. The proof is conclusive that Lane sold the 40 acres to the committee, conveying it to Dunbar, as trustee, with the agreement that he was to have the 3 acres thereafter to be selected by him upon the repayment of a proportionate part of the purchase money.

Charles Drake, one of the bonus committee, testified:

"We bought 40 acres of land from him [Lane] but he was to have a block out of it anywhere he wanted it—three acres or a block. The deed that was made to the committee was for 40 acres, and is the deed which has been read in evidence here. Our committee then instructed Mr. R. A. Dunbar, as our trustee, to convey to Mr. Lane the block of land which he had reserved in his negotiations with us; we instructed him to execute a deed to Mr. Lane, but I do not know of my own knowledge whether or not the same was done. I do know that we instructed it done."

Kennedy, the president of the road, testified that he knew of the arrangement as to the reconveyance of the land to Lane as a part of the consideration of the sale of the land to the committee, and said that they never made any claim to block 34 of said addition as platted.

[6] While the agreement for the reconveyance may be within the statute of frauds, we assume, however, that it will not be further questioned that a parol authority to Dunbar to reconvey the land is not within the statute of frauds. It is conclusive that block 34 of said addition is situated in the southeast corner of the 40-acre tract, transferred by Lane to Dunbar, and is embraced in the deed of said tract, made by the master in pursuance of the judicial sale.

There is no complaint against the peremptory instruction embodied in appellants' brief. There is an argument in appellants' brief, based upon an assignment hereinafter mentioned, that because there is no notice shown to the lien creditors of the railroad company, who were beneficially entitled to said lien, on account of the contract mentioned, that, though Wilkerson may have had notice and King and Rose did not show they paid a valuable consideration for the land, however, the burden being upon the defendant Lane to show notice to said lien creditors, there should have been a recovery by the appellants instead of appellee.

We have had considerable trouble with the numerous assignments of appellant, complaining of certain testimony as to the notice given to the purchasers at the judicial sale on the ground that the same is immaterial for the reason that notice is not imputed to the lienholder—whether there is any real complaint or proper assignment, challenging the peremptory instruction, of the judgment of the court, necessary to discuss in the case.

The thirty-second assignment is that the court erred in not granting plaintiffs' motion to strike from the record and withdraw from the consideration of the jury the testimony of the witnesses Grundy, Deaver, Cagle, and Lane, that notice was given to the purchaser after judicial sale, for the reason that the judgment lien creditors are not shown to have had any notice, and that such testimony is wholly immaterial and irrelevant and cannot affect the rights of the purchaser in the land. This motion is shown to have been made at the close of the case.

If the assignments, based upon such a motion, and the action of the court, in refusing to withdraw the testimony, are sufficient to permit us to review the cause, we still think the judgment of the trial court, as decided upon the original hearing, should be sustained.

The cases of Linn v. Le Compte, 47 Tex. 441, 442, and Grace v. Wade, 45 Tex. 522, probably sustain the contention of the appellants that the nature of the lien and the creditors of the railway company are of such a character as that the burden of proof would be upon Lane to show that he had notice of his claim before recovery could be had against Rose and King. Such lien creditors, however, did have notice from the record that Dunbar was a trustee for the railroad, and the bonus committee, for the purpose of selling the land to pay the claims of those performing grade work upon the roadbed of the railroad company.

[7] It is conclusive that Lane paid the agreed consideration of $407 for the 3 acres. The very contract evinced by this record, which gave the claimants an equitable lien upon the land, on account of the grade work performed by them, shows that the land was to be sold and the money was to be placed in a Memphis bank to carry out said agreement. Of course this agreement was solely between the railroad and Kennedy, the president of the same, and the bonus committee, represented by an executive committee. When the land was sold by Dunbar, as trustee, by virtue of the authority of those who owned the equitable title to the land, we think the particular land in the conveyance was discharged from the trust to the extent that the claimants, on account of having been grade workers could not claim a lien by virtue of the contract and must look to the money representing the land. Lane was not a party to the suit in the district court of Hall county, in which their equitable lien was established upon the land. When the grade workers recognized a deed to Dunbar as trustee, and the contract between the railroad and the bonus committee, by the assertion as claimants of an equitable lien, on account of their labor upon the grade, Dunbar was as much their trustee as of the other parties to the contract. We do not think that Lane was required to see that the trust agreement was carried out according to the terms of the same between the bonus committee and the railroad; hence we think that on account of Wilkerson's notice of Lane's rights, at the judicial sale, and the failure to prove that King and Rose paid any value for the land, appellants are in no position to recover.

The original opinion in this case on original hearing is not satisfactory, and we think that a part of same, as to the reasons given for the affirmance of the judgment, was error. The original opinion is withdrawn and the judgment affirmed, with the additional order that the appellants be given 15 days from and after the 3d day of May, 1916, within which to file an amended motion for rehearing.