## RIDDLE et al. v. KEECHI OIL & GAS CO.

No. 9555—Opinion Filed Nov. 26, 1918.

Rehearing Denied Dec. 24, 1918.

(176 Pac. 737.)

### Vendor and Purchaser—Bona Fide Purchaser—Necessity of Inquiry.

Knowledge by a purchaser of land that the grantor under whom the vendor claims is in possession thereof is not such knowledge as to put a purchaser upon inquiry as to the title of such grantor.

(Syllabus by Hooker, C.)

Error from District Court, Caddo County; Frank Mathews, Assigned Judge.

Action by F. E. Riddle and others against the Keechi Oil & Gas Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

T. J. O'Neill and Riddle & Hammerly, for plaintiffs in error.

Bond, Melton & Melton, for defendant in error.

Opinion by HOOKER, C. On the 18th day of December, 1915, J. J. Berry, the then owner of certain real estate in Caddo county, executed an oil and gas lease thereon to one I. M. Duncan for a period of five years from that date, and the essential parts

of said lease involved in this action are as follows:

"1. The party of the second part agrees to commence a well on said premises within one year from the date hereof or pay at the rate of one dollar per acre in advance for each additional twelve months such completion is delayed from the time a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease.

"2. The party of the second part shall not be bound by any change in the ownership of said land until duly notified of any such change, either by notice in writing duly signed by the parties to the instrument of conveyance, or by the receipt of the original instrument of conveyance or a duly certified copy thereof.

"3. All payments which may fall due under this lease may be made directly to first parties on deposit in Bank of Cement to his credit if second party agrees to commence operation in 90 days somewhere in the vicinity of Cement, Oklahoma, and drill to a depth of 3,000 feet provided oil or gas is not found in paying quantities at a lesser depth and continue operations until well is completed as above specified.

"4. The party of the second part, its successors or assigns, shall have the right at any time, on the payment of $——to the party of the first part, heirs or assigns to surrender this lease for cancellation and release the same of record, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine; provided, this surrender clause and the option therein reserved to the lessee shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this issue, or any of its terms, or to recover possession of the leased land, or any part thereof, against, or from the lessor — heirs, executors, administrators, successors or assigns, or any other person or persons. All covenants and agreements herein set forth between the parties hereto shall extend to their successors, heirs, executors, administrators and assigns."

It is an admitted fact that, after the execution of the aforesaid lease, the said Berry executed a general warranty deed to said property to one Schlotterheck, but he (Berry) remained in possession of said premises, and said conveyance was in truth and in fact intended only as a mortgage to secure an indebtedness due by Berry to him, and that a short time after the institution of this suit the said indebtedness was paid and the mortgage released.

On the 8th day of February, 1916, the lessee, I. M. Duncan, assigned to one Goolsbee all of his right in and to said oil and gas lease upon said property, and on the 20th day of March, 1916, the said Goolsbee, for a valuable consideration, assigned all of his right in and to said oil and gas lease upon said property to the Keechi Oil & Gas Company, and on the 26th day of June, 1916, said company assigned to J. M. Crook all of its rights under said oil and gas lease on a part of the real estate embraced in this action, and on the 25th day of August, 1916, the Keechi Oil & Gas Company assigned to the Oklahoma Star Oil Company all of its right under and by virtue of said oil and gas lease to the remaining part of said real estate involved in this action.

On the 8th day of December, 1916, the plaintiff in error F. E. Riddle instituted his suit in the district court of Caddo county, and in the petition filed in said action alleged that on the 4th day of December, 1916, one J. J. Berry sold, transferred, and assigned for a valuable consideration to him all of the oil and gas rights within and to the real estate involved in this action, together with all such rights and privileges connected with or incident to such oil and gas rights, and that the said Berry agreed to execute and deliver to him upon the performance of the condition of the contract of sale by him an oil and gas lease thereon in due form.

It is also alleged that one Schlotterbeck held a conveyance to said property, but that said conveyance was made for the purpose of securing an indebtedness due him by said Berry, and that he (Riddle), in his contract of purchase, agreed to pay off and discharge said indebtedness, and had tendered to Schlotterbeck the amount due and demanded a conveyance by quitclaim deed in favor of Berry, and the amount due to S. was tendered into court, and the execution of a quit claim deed to said Berry demanded.

It is further alleged that the Keechi Oil & Gas Company and the Oklahoma Star Oil Company claim some interest in said land, and in and to said oil and gas lease thereon, but whatever interest they claim was void as to the plaintiff Riddle, and that the same constituted a cloud upon his title, and he asks that the same be removed.

The plaintiff asks that all of said defendants be required to appear and answer, and that he have a judgment cancelling a contract made by Berry with one Hill, and that said S. be directed to execute a quitclaim deed of conveyance of said Berry to the premises described, and that said Berry be

required to execute an oil and gas lease to plaintiff as he had agreed to do, and as contemplated by the contract made and entered into between him and the said Berry, and for such other relief as equity deems just and proper.

Thereupon J. J. Berry filed his answer and cross-petition in which he admitted that he had sold to the plaintiff Riddle an oil and gas lease upon certain property in Caddo county, and further admitted that in December, 1916, he had executed a lease in manner and form as contemplated by his contract.

It is further alleged in said answer that the conveyance to S. was only intended as a mortgage, but that, since the institution of the suit by Riddle, the same had been paid to S. and said mortgage released.

By way of cross-petition against the Keechi Oil & Gas Company, Oklahoma Star Oil Company, O. W. Goolsbee, J. M. Crook, and I. M. Duncan, the said J. J. Berry alleged that on the 18th day of December, 1915, he executed an oil and gas lease to the defendant I. M. Duncan, the essential parts of which are stated hereinbefore, and he averred that the said lessee nor any one claiming under her had performed either of the first two provisions quoted therein, to wit: The completion of a well with one year from the date of said lease upon said premises. Nor did said lessee nor any of her assigns commence the drilling of a well within 90 days within the vicinity of Cement, Okla., and continue the drilling thereof until same was completed, nor did said lessee or any of her assigns or any one claiming under her tender or pay to him the amount of $1 per acre as provided for in said contract, but upon the contrary, the said lessee and all parties claiming by, through, or under her, wholly failed to carry out any of said provisions in said lease, and by reason thereof said lease contract thus made by him with said Duncan had become inoperative and of no force and effect.

He further alleged that he had exercised his right under the provision quoted in said lease by tendering to the lessee and her assigns $1 and demanding a surrender of said lease contract, and further gave notice to them and each of them of the breach of said contract and forfeiture therein as a consequence thereof, and that by reason of all of said facts said contract had become void.

The assignment of said oil and gas lease by Duncan, and subsequent assignment to the other parties stated above, are also alleged in cross-petition, and it is further alleged therein that he is entitled to have

each and all of said conveyances canceled of record and to be held of no force and effect by reason of the facts hereinbefore stated.

The Keechi Oil & Gas Company, O. W. Goolsbee, and J. M. Crook, and the Oklahoma Star Oil Company filed an answer to the petition of F. M. Riddle and also the cross-petition of Berry, wherein they alleged the execution of said lease, the assignment thereof to them, a fulfillment of the conditions thereof, and asked that the lease from Berry to Riddle be cancelled, and that they be adjudged the owners of a valid lease upon said property, to which the said Riddle filed a reply which consisted of a general denial, and other matters fully stated in the answer and cross-petition of said J. J. Berry.

The trial court heard all of the evidence, and at the conclusion thereof denied to the plaintiff Riddle any relief against the Keechi Oil & Gas Company, Oklahoma Star Oil Company, and J. M. Crook, and denied to Berry any relief against the Oklahoma Star Oil Company and J. M. Crook, and further found that the Keechi Oil & Gas Company and its assigns have complied with all the terms and provisions of the oil and gas lease made by Berry with Duncan which had been subsequently assigned by Duncan to the Keechi Oil & Gas Company, Oklahoma Star Oil Company, and J. M. Crook; and further adjudged that J. M. Crook was the legal and equitable owner of an oil and gas lease on the northwest quarter of the northeast quarter of section 31, and that the Oklahoma Star Oil Company was the legal and equitable owner of an oil and gas lease on the northeast quarter of the northeast quarter of said section, and further ordered the cancellation of the lease by Berry to Riddle, from which judgment Riddle and Berry had appealed to this court.

As will be seen from the allegations of the pleadings and the evidence, there are three reasons assigned why the lease made by Berry with Duncan should be canceled:

1. Because the lessee therein named had not commenced operation within 90 days in the vicinity of Cement, Okla., to drill a well to the depth of 3,000 feet, provided oil or gas were not found in paying quantities at a lesser depth, and continued operations until said well was completed as specified in said contract.

2. Because said lessee nor any one for her had not completed a well upon the premises embraced in said lease within one year from the date thereof, nor had she paid to the lessor, Berry, or to any one for him, the rent-

al of $1 per acre in advance upon her failure to drill said well on said premises.

3. That she had tendered the $1 provided for in the lease and demanded a surrender of the lease in accordance with its terms, inasmuch as it is provided in said lease that the second party should have the right at any time, upon the payment of $1, to surrender this lease for cancellation, and it was contended that this provision of the lease might be taken advantage of by the lessor as well as the lessee, and said lease canceled and surrendered in the same way and under the same provisions as were given by said lease to the lessee.

With reference to this alleged surrender clause of this lease, an examination of the lease itself shows that this provision was never completed; in other words, that the lease is silent as to the amount of money that should be paid by the lessee for the privilege of surrendering this lease. We do not think this provision of the lease has any binding force or effect, because the amount of the consideration to be paid was not inserted in the lease itself. There is no contention here that the amount was left blank by mistake or fraud, and we are therefore unable to say whether the amount of money contemplated by this contract was $1 or $1,000 and we are therefore of the opinion that this provision of the lease, on account of the essential parts thereof being lacking, has no binding force or effect.

The trial court proceeded upon the theory that the deposit of the rental in the bank named in the lease on or about the 18th day of December, 1916, to the credit of S., who then had record title to the property in question, was sufficient compliance with the terms of the lease to entitle the lessee or his assigns to hold the same.

The evidence here shows that this money was deposited in due time to the credit of S., who then had record title, and while it is an admitted fact that this deed held by S. was only a mortgage, and that Berry at all times was in continuous possession of the property, still we are of the opinion that the assignee of Duncan has complied with the provisions of the lease which rendered the payment of the rental as mandatory and necessary in order to preserve the rights of the lessee in the premises.

This court, in the recent case of Collins Inv. Co. v. Waide, 70 Okla. 191, 173 Pac. 835, has said:

"Knowledge by a purchaser of land that the grantor under whom the vendor claims is in possession thereof is not such knowledge as to put the purchaser upon inquiry as to the title of such grantor."

The authorities cited in the case named clearly establish that the assignee of this lease was authorized to deal with the record owner as the true owner of this property, and the possession by Berry, the grantor, was not sufficient to put him upon inquiry as to the title of the grantee.

And in Wade on Notice, § 298, it is said:

"This exception is obviously just and reasonable. When a party places upon record an instrument, the provisions of which are consistent with his possession of the premises, while the circumstance of his being in possession undoubtedly has a tendency to excite inquiry in the minds of those contemplating a purchase, the fact that he has placed the evidence of his right to occupy upon record, where it is accessible to the whole world, arrests inquiry at that point, and plainly informs the purchaser that he may rest securely upon the knowledge already obtained."

And in section 299 it is said:

"So the possessor may by his own act, in putting upon the record an instrument inconsistent with title in himself, or by executing and delivering such a recordable instrument, be estopped from relying upon his possession as evidence to subsequent purchasers, that he claims title to the premises. In the case cited, defendant had conveyed the land in question to one in whom he placed confidence, subject to a secret trust. The deed of conveyance was absolute on its face and was duly recorded. Relying upon the record, plaintiff purchased the premises from the apparent grantee for value, who in making the sale was guilty of a breach of trust. But the plaintiff took without knowledge or notice of the trust, although the defendant, after making the conveyance, remained in possession and openly exercised acts of ownership over the property."

With reference to the commencing within 90 days the operation upon a well in the vicinity of Cement, this was a question of fact presented to the trial court, and the evidence is somewhat conflicting as to when the well was commenced, and as to whether operations were continued. It is an admitted fact that a well was not drilled to a depth of 3,000 feet, and it is a disputed fact as to whether oil and gas were found in paying quantities at a lesser depth.

It is further asserted that, inasmuch as the lease from Berry to Duncan provided that "second party agrees to commence operation in 90 days somwhere in the vicinity of Cement, Oklahoma. and drill to a depth of 3,000 feet, provided oil or gas is not found in paying quantities at a lesser depth and

continue operations until said well is completed," and as they had failed to comply with this provision of the lease, the same entitled the party seeking the cancellation of this lease to recover in this action.

It must be born in mind that Berry had no interest in the well that was to be drilled in the vicinity save that interest which would accrue to him by virtue of owning land in this vicinity. This territory for oil purposes was undiscovered, and it was the desire of all the property owners in that locality to have the territory tested, and the discovery made, as to whether oil or gas could be found in this locality.

The record shows that the lessees did commence a well in the vicinity of Cement, that they did discover oil, and the trial court found that the same was in paying quantities, and that said parties had complied with the provisions of the lease.

We have read this evidence very carefully, and, while the same is conflicting, still we cannot say that the judgment of the court is clearly against the weight of his evidence. Considering this evidence together with the conduct of the lessor in its connection with the drilling and operation of said well, we are of the opinion that the judgment of the trial court should be sustained.

This cause is hereby affirmed.

By the Court: It is so ordered.