**PERRY et al. v. NORRIS et al.**

No. 26458.   Oct. 20, 1936.

Frank E. Lee and Wimbish & Wimbish, for plaintiffs in error.

Denver Davison and Hayes, Richardson, Shartel, Gilliland & Jordan, for defendants in error.

PER CURIAM. This action was commenced by P. A. Norris and Josephine Norris, husband and wife, but inasmuch as Josephine Norris, the wife of P. A. Norris, is not necessary to a decision of the cause, and as the controversy arose around land which plainly belonged to the plaintiff P. A. Norris, the parties will hereinafter be referred to as plaintiff and defendants.

On the 22nd day of February, 1934, plaintiff filed his action alleging that on November 1, 1932, plaintiff executed a warranty deed to N. T. Heard covering the following described real estate:

"The S. ½ of the S. E. ¼ of the S. E. ¼ of section 30, and the S. W. ¼ of the S. W. ¼, and the W. ½ of the S. E. ¼ of the S. W. ¼, and the S. E. ¼ of the S. E. ¼ of the S. W. ¼, and the S. W. ¼ of the S. E. ¼ of section 29, all in township 2 north, range 8 east, of the Indian Meridian."

That N. T. Heard paid nothing as a consideration for said deed and on said date or immediately thereafter N. T. Heard executed a quitclaim deed to the plaintiff; that the warranty deed was recorded, but the quitclaim deed was never recorded and that the same has been lost; that subsequent to the execution of the two deeds and on or about the 30th day of September, N. T. Heard died leaving as his heirs Ralph C. Heard, otherwise known as R. C. Heard, Daisy Heard, N. T. Heard, Jr., Lois Webster, formerly Lois Heard, Daniel Heard, and Marion S. Heard; that these latter parties all conveyed to Ralph C. Heard, who in turn conveyed to the defendant Robert J. Wimbish, who in turn conveyed to the defendants Emanuel and Hatcher, and that there was also executed by Ralph C. Heard to P. C. Perry an oil and gas lease.

Plaintiff prays that these instruments all be canceled and that the title be quieted in him. Upon a trial to the court without a jury, after making elaborate findings of fact and conclusions of law, the court found for the plaintiff and against the defendants, from which order and judgment so quieting the title defendants prosecute this appeal.

The evidence reveals that P. A. Norris was president of the First National Bank of Ada, Okla., and that N. T. Heard had for a long time been his employee; that on the date above mentioned two deeds were executed, the first being a warranty deed to N. T. Heard covering the above-described premises and the second a quitclaim deed back from N. T. Heard to the plaintiff; that no consideration was paid by N. T. Heard and that he took only the bare and naked legal title, which he conveyed by said quitclaim deed; that at all times P. A. Norris has been in the open, actual, and notorious possession of the property by tenants; that the tenants all executed leases to the said P. A. Norris and that N. T. Heard looked after the collection of the rents and paid the rents to the plaintiff after collected; that sometimes N. T. Heard would make the collections of the rents and that sometimes the tenants would pay directly to the plaintiff; that in the year 1933 John Thomason was tenant on said premises and also operated the Oaks Dairy. The Oaks Dairy consisted of some land adjoining the 130 acres in question and under Thomason it and the land in question was operated under a common lease. In the year 1934, the elder Griffin was tenant at the Oaks Dairy and J. T. Griffin, the son, was tenant on the land in question. One McKinney signed the lease with the son of the elder Griffin, but the testimony shows he never really was a tenant in possession. Thomason moved on the place in October, 1932, and remained thereon for the remainder of that year and for the year 1933; that in April, 1933, N. T. Heard died. There was a mortgage on the place for the sum of $2,800 to the Phoenix Joint Stock Land Bank of Kansas City, Mo.; that the reason for the execution of the deeds aforesaid to N. T. Heard was that the plaintiff anticipated there would be a foreclosure, and as the land was not worth the mortgage indebtedness, he did not wish a suit in fore-

closure to be brought against him while he was president of said bank.

The testimony reveals that soon after the death of N. T. Heard one Selby, as an agent for the loan company, came to plaintiff to ascertain if he wished to place the loan in good standing, and that Selby thereafter went to Ralph C. Heard, who appears to have been acting for the Heard heirs. Defendants offered in evidence the statement of Selby that Norris intended to have nothing further to do with the place and that Selby so informed Ralph C. Heard, who communicated the information to Wimbish. The court refused to receive these statements. Ralph C. Heard then went to Robert J. Wimbish and advised Wimbish of the condition of the title and sought to inquire as to whether the loan company could obtain a judgment against the Heard heirs. Defendant Wimbish then made the proposition to Ralph C. Heard that if he would obtain deeds from the remainder of the heirs, he, Wimbish, would pay Ralph C. Heard $75 for the title to the land; that Ralph C. Heard obtained warranty deeds from the remaining heirs of N. T. Heard and then executed a warranty deed to Robert J. Wimbish; Wimbish paid Ralph C. Heard $75 for said title; prior to the execution of this deed to Wimbish, Ralph C. Heard executed an oil and gas lease to P. C. Perry, of Oklahoma City, who paid therefor $650; $400 of this was paid to the Phoenix Joint Stock Land Bank of Kansas City, Mo., to bring the loan out of delinquency and place it in good standing; $50 was paid to the loan company for an abstract by Robert J. Wimbish and $131.75 was paid to Emanuel and Hatcher as commission for selling the oil and gas lease to P. C. Perry. There was then executed by Robert J. Wimbish a warranty deed under date of January 22, 1934, to W. M. Emanuel and Oscar Hatcher reserving 5/13 of the oil and gas interest to Robert J. Wimbish. All of these exhibits are attached to the plaintiff's petition and properly described in sequence by letter.

J. T. Griffin, as a witness for the plaintiff, testified that he had a contract for the land in question for the year 1934; that he moved there about Christmas time of 1933 and raised a little crop and paid rent to the plaintiff; that on the 28th day of February, 1934, defendants Hatcher and Robert J. Wimbish came out to his p'ace, that Robert J. Wimbish had been out there prior to that time; that witness told Wimbish he was renting from Norris; that he had always paid his rent to Norris. R. W. Griffin, the father of J. T. Griffin, testified he rented the farm with W. L. McKinney from one Brent, who was the agent of Norris after Heard died. He testified that he had always paid his rent to Norris; that he moved out there in January, 1934; that Mr. Wimbish and Mr. Hatcher came out there and he told them the place belonged to Mr. Norris; that was about the 10th day of January, 1934; that at that time the boy, meaning J. T. Griffin, signed a paper for them; that they said it was for oil and gas lease and showed that the boy was a tenant; that Wimbish came by himself first and about the last of January they both came out there and said that they had bought the lower part of the farm from the Heard heirs. Mrs. Ada Griffin, as a witness, testified that she told Hatcher that Mr. Norris owned the place, but that Mr. Brent had charge of the renting of the place. The testimony further reveals that Robert J. Wimbish went to the home of the son of J. T. Griffin and obtained from him a release of tenancy or a disclaimer of tenancy, which was sent to P. C. Perry at Oklahoma City on or about the date of the execution of the oil and gas lease to P. C. Perry. P. C. Perry testified that he obtained this disclaimer or release by the tenant and that it contained a simple statement that the tenant had no interest in the premises and claimed no interest therein. P. C. Perry testified that he never saw this place and that he knew nothing about any lawsuit prior to the date of the service of summons upon him after the commencement of this action, and that he made no inquiry of the tenant as to whose tenant he was or as to who his landlord was. Robert J. Wimbish testified that sometime in the fall of the year 1933, Ralph C. Heard came to him and gave him a history of this land and wanted to know whether the loan company could get a personal judgment against the heirs of N. T. Heard; witness corresponded with the Phoenix Joint Stock Land Bank and obtained information as to the amount of the loan and the past indebtedness due, and offered, in order to straighten up the loan and prevent a foreclosure, to pay $75 for a deed to the place if Ralph C. Heard would obtain deeds from the heirs; that this was done; that witness attempted to sell the lease on the place first to Emanuel, but failed to do so, and that he then found a buyer and the lease was executed to P. C. Perry as aforesaid. He also testified as to the disposition of the moneys as hereinabove set out, as to the execution of the lease, and taking of the deed; he testified that before the lease was executed he visited the premises and asked the elder Griffin where the N. T. Heard farm was; that the elder Griffin told him his boy lived on

it; that he presented the boy with a tenant's disclaimer and the boy signed it and he gave this to Emanuel; that there was no name of any landlord in the disclaimer; that there was another man and two or three boys there in an argument and that at no time did anyone say anything about the place belonging to Norris. He admitted that he did not inquire as to who owned the place for the reason that he stated that he knew who owned the place; that he relied upon what Ralph C. Heard told him; that the elder Griffin said that his boy lived on the Heard place, but that he, the elder Griffin, lived on the Norris place and that is the only thing that was said about the ownership of the place.

Upon request the court made findings of fact to the effect that the two deeds were executed as aforesaid and that at all times prior to and subsequent to said execution of the deeds the plaintiff had been in open, continuous, and notorious possession of the premises by tenancy; that N. T. Heard died in April, 1933, leaving the aforesaid heirs as named in the statement of fact; that on January 8, 1934, Ralph C. Heard executed to P. C. Perry the oil and gas lease, and on January 22, 1934, Ralph C. Heard executed to Robert J. Wimbish the warranty deed in question, and on said date Robert J. Wimbish executed to Emanuel and Hatcher, defendants herein, the deed as above set out. The court further found that the purchase of oil and gas lease on said land by said defendant Perry was induced directly by the defendants W. M. Emanuel and Oscar Hatcher, who had themselves dealt with Robert J. Wimbish, Wimbish having negotiated with Ralph C. Heard for the purchase of said land and with Emanuel and Hatcher for a sale of interest therein to them; that defendants Robert J. Wimbish, W. M. Emanuel, and Oscar Hatcher visited said land before the consummation of the deal and were informed by tenants Griffin, father and son, and by the wife of the elder Griffin that the land belonged to P. A. Norris and that they were renting the same from him; that at the time P. C. Perry took his oil and gas lease upon said land he knew that there was a tenant or tenants thereon, and before he would accept and pay for said lease he required the defendants Emanuel and Hatcher to procure from the tenant who actually resided upon said land what said defendants called a tenant's disclaimer, which was in writing, and further that the younger Griffin was not the owner of said land, but was a mere tenant thereon, and that he disclaimed any right, title, or interest therein except his right to use and occupy as a tenant during the period of his tenancy; that this disclaimer did not purport to state whose tenant Griffin was; that P. C. Perry had knowledge by said tenant's disclaimer that the land was in the actual possession of some person by and through his tenants; the said P. C. Perry never visited said land, never saw said tenants, and made no inquiry of him as to whose tenant he was and as to the right, title, and claim of the tenant's landlord; and that if said P. C. Perry had inquired of the younger Griffin or of his father who was his or his father's landlord, he would have ascertained that they had rented said land for the year 1934 from Norris, and by an inquiry from P. A. Norris he could have learned the facts as to the right, title, and claim to said land.

Exceptions to the findings of fact were duly saved. Motions for new trial were separately filed by the respective defendants which raise the right to present all of the questions involved in this litigation.

The finding of fact by the trial court as to the actual knowledge of the defendants Wimbish, Emanuel, and Hatcher is amply supported by the evidence. We are of the opinion, and hold, that so far as actual knowledge on behalf of these parties, they have no claim in the premises. Aside from such actual knowledge, the court found, and such findings are amply supported by the evidence, that prior to the execution of the warranty deed by plaintiff and the quitclaim deed by N. T. Heard, and at all times subsequent thereto, plaintiff had been in actual, open, and notorious possession of the premises by his duly constituted tenants. This finding of fact is not seriously contested. Defendants take the position that they are bona fide purchasers. Our court has held that it is the duty of the purchaser to make inquiry of the parties in possession. See Smith v. Ray, 119 Okla. 145, 249 P. 373; Tittle v. Robberson, 143 Okla. 97, 287 P. 1011; Wilkinson v. Stone, 82 Okla. 296, 200 P. 196. In Wilkinson v. Stone, supra, we said:

"The possession of real property carries with it the presumption that the possession of the occupant is rightful, and it is the duty of those dealing with others than the party in possession regarding such property to ascertain the claim of the party in possession. The open, actual possession of such property gives notice to the world of just such interest as the possessor actually has therein."

Defendants in answer to this statement urge and cite authority in support of the proposition that where the vendor presents conveyances to himself prima facie valid, and assures the purchaser that his title under them is perfect, no duty to investigate fur-

ther is imposed upon the buyer in the absence of other facts and circumstances suggesting investigation. United States v. Detroit Timber & Lumber Co., 131 Fed. 668; Riddle v. Keeche Oil & Gas Co., 74 Okla. 73, 176 P. 739; Whayne v. Seamans, 95 Okla. 168, 217 P. 859.

It is also stated upon reliable authority that, while it is the general rule that open and notorious possession of real estate under an apparent claim of ownership is notice to the world of whatever claims the possessor asserts, there is an exception to this rule in that it does not apply to a vendor who remains in possession, so as to require an innocent purchaser from his grantee to inquire as to whether such vendor had an interest in the land conveyed. See McCarty v. Broneaugh, 128 Okla. 36, 261 P. 165; Hass v. Gregg, 52 Okla. 51, 152 P. 1126.

An examination of these authorities will reveal that they are not in point. The defendants in this case were not presented with a title from the vendor. Ralph C. Heard was not a vendee, and if it is claimed that Robert J. Wimbish is a vendee, Ralph C. Heard was never in possession of the premises under any color of title that would be effective between a vendor and vendee, for he was at most one of the unknown heirs of N. T. Heard, deceased. The above authorities, being an exception to the general rule that a party must inquire of the party in possession as to his actual rights of possession, cannot be used as an authority for the position taken by the defendants.

Under the same proposition defendants referred to the cases of Hass v. Gregg, supra, King v. Land (Tex. Civ. App.) 186 S. W. 392, and Hunter v. Hale (Tex. Civ. App.) 233 S. W. 1005. These authorities deal with the possession of the original grantor thereof after reconveyance to same by the grantee, and hold that the possession of the original grantor under such case is not notice to the adverse party of his title unless they actually knew of the deed.

The case of Hass v. Gregg, supra, does not exactly deal with the premise, but the authorities of our court as pronounced therein do establish the doctrine that the immediate grantor who remains in possession cannot question the title where his immediate grantee has presented to an innocent purchaser a title sufficient to convince such innocent purchaser that the title is good, and that thereafter it is not necessary for the innocent purchaser to inquire of the immediate grantor who remains in possession of

any right that he may claim. F. G. Collins Inv. Co. v. Waide, 70 Okla. 191, 173 P. 835; Riddle v. Keeche Oil Co., 74 Okla. 73, 176 P. 737; and McCarty v. Broneaugh, 128 Okla. 36, 261 P. 165.

Plaintiff argues that the basis for this rule is that it generally requires a reasonable period of time after the execution and delivery of a deed conveying land for the grantor to wind up his affairs or gather his crops, procure another place, and thus prepare himself to vacate the premises; that therefore, during such reasonable time after the execution and delivery of the conveyance, the grantor's possession is not deemed adverse to his grantee, and states that the exception goes no further than the reason for the rule, and that therefore the law is that if the grantor, instead of himself remaining in possession, places a tenant in possession, or if the grantor retakes and retains possession thereof for a long time, the exception to the rule breaks down. Plaintiff quotes from 66 C. J. 1174, dealing with the general rule that possession by the grantor after execution and delivery of his deed is not notice, as follows:

"The exception, however, has its qualifications and is not applicable where the grantor does not retain possession in himself, but delivers it up to his tenant, or takes possession subsequent to the execution of the deed, or remains in possession for a long time, or the subsequent purchaser has actual knowledge that the possession of the prior grantor is not by sufferance of the grantee, but is by virtue of some right remaining in such grantor inconsistent with the terms of his deed. Also, the possession of the prior grantor is sufficient notice to a subsequent purchaser to put him on inquiry as to when such possession began and the length of its continuance."

We are frank to confess that the last authorities cited above from our court do not appear to draw any such distinction, but as we view the authorities, they are not in point under the fact situation in this case. The grantor of plaintiff was N. T. Heard, who died in April, 1933. If he was a vendee within the terms of these authorities, it cannot be claimed by any stretch of legal conclusions that Ralph C. Heard was a grantee or a vendee within the terms of these cases.

Defendants in their first proposition urge that the court erred in finding as a conclusion of law that a trust agreement was entered into by plaintiff and N. T. Heard. Conceding that this was error of the trial court, such error can serve no purpose to reverse this cause. The court found, and such finding is supported by ample testimony, that on the 1st day of November, 1932, N. T. Heard exe-

cuted and delivered to the plaintiff a quitclaim deed, and it is therefore not necessary to base this case upon the establishment of a trust under the provisions of our statute declaring that it must be executed with a certain degree of regularity, nor to enter a discussion as to whether a resulting trust or a constructive trust resulted. The decision is based properly upon a legal title which vested in the plaintiff by the execution of the quitclaim deed. It is a well-known principle of law that where a court renders judgment for the proper parties, but bases his judgment upon a misstatement of the conclusions of the law, this court will not reverse the judgment, and we are therefore of the opinion, and hold, that if the court erred in its statement that such relation created a trust, the evidence so clearly established a title in favor of the plaintiff as not to authorize a reversal of the cause for that reason.

In their reply brief defendants urge that there was no competent testimony introduced to support the execution of the quitc'aim deed by secondary evidence. A reference to the record will show that the defendants did not contest the sufficiency of this evidence or object to the sufficiency thereof or the competency thereof on the ground that plaintiff had not established a basis for the introduction of secondary evidence. The record reveals that defendants were objecting to the testimony of plaintiff Norris upon the ground that he was an incompetent witness to testify about proceedings had with a deceased person, and nowhere did they object to the sufficiency of the evidence for the reason that it was secondary. We have examined such evidence and find a clear statement by the plaintiff that he had made a diligent search for the quitclaim deed and that it had been lost.

The second proposition of the defendants, that they were innocent purchasers and are protected against the claim of plaintiff under the facts alleged and all of the evidence introduced in the case, has been disposed of by our finding that as to the defendants Robert J. Wimbish and W. M. Emanuel and Oscar Hatcher the evidence thoroughly warrants the finding of the trial court that they were informed as to the right of Norris prior to the execution of the deeds. It has also been disposed of by the statement and analysis of the foregoing authorities which imposed the duty upon the defendant P. C. Perry to make an inquiry of tenants in possession, and having failed to make such inquiry, he cannot claim that he is an innocent purchaser.

The third proposition deals with an estoppel and is stated in the following language:

"Plaintiffs were and are estopped by their deed and by their conduct to claim the title to the premises in question as against the defendants."

It will be seen that the above authorities hold that the simple execution of a deed is not an estoppel, for the duty is imposed upon the parties to make an inquiry of those in possession. Hass v. Gregg, supra; Smith v. Ray, supra; Tittle v. Robberson, supra; Wilkinson v. Stone, supra.

Let us examine the facts involved to determine what conduct upon the part of the plaintiff misled any of the defendants. P. C. Perry says he never saw the land, did not know where it was, never talked to Norris, and the only thing he obtained was a disclaimer from the tenant. It is plain, therefore, that no act of plaintiff Norris mis'ed P. C. Perry, and there is no basis for urging that plaintiff is bound as against him by the rule of estoppel.

Robert J. Wimbish states that Ralph C. Heard detailed the nature of the case or the "history" of the place. Suppose we hold as competent the evidence that Selby, the agent of the loan company, had informed Ralph C. Heard that Norris had no further interest in the place and did not intend to place it in good standing. And suppose that Robert J. Wimbish relied thereon. Such testimony is not competent testimony to establish an estoppel, for the very nature thereof is of such character as to inform the defendant Wimbish that p'aintiff Norris had some claim to the premises. He cannot at the same time admit that he had notice of the claim of plaintiff Norris and then assert that he was misled by failuie to have notice thereof. As to the defendants Emanuel and Hatcher, the record does not contain any statement made to them at that time by anyone who can claim adversely from plaintiff Norris. Aside from that fact, there is ample testimony from the tenants in possession of the place that they notified defendants Emanuel and Hatcher of the claim of Norris. The record reflects that these two defendants scrupulously refrained from questioning the tenants in possession as to who was their landlord. We are of the opinion, and ho'd, that there is no element of estoppel in this state of facts. In one of the authorities cited by the defendants, to wit, Nickel v. Janda, 115 Okla. 207, 242 P. 264, this court said that the question of equitable estoppel is to be decided upon the particular circumstances of each case. It is true that the statement therein is made that deeds are solemn instruments, and that the parties making the deed cannot be presumed to question the rights delegated

therein, but it is to be remembered that in this case the defendants are not claiming under any deed from the plaintiff or from the plaintiff's vendee. In Williamson-Halsell-Frazier Co. v. King, 58 Ok'a. 120, 158 P. 1142, it is stated that to constitute an estoppel the person asserting it must have been induced by the facts set up to do the thing he did. Ralph C. Heard was the heir and only one of several heirs of the estate of N. T. Heard. There has been no administration upon said estate and no determination of the heirs of N. T. Heard, deceased. These parties chose to take the title upon deeds of conveyance made first to Ralph C. Heard and from Ralph C. Heard to them. In this connection we wish to call the attention of the parties to the cases decided by this court in another question relative to decrees of distribution, although we were not deciding the question as to the right of subsequent parties to be deprived of the right to claim and possession of innocent purchaser under record title. Oil Well Supply Co. v. Cremin, 143 Okla. 57, 287 P. 414; White House Lbr. Co. v. Howard, 142 Okla. 163, 286 P. 327. It wi'l be seen by an examination of these cases that one who takes title from the heirs of a person whose estate has not been administered cannot be denominated vendees under the rule of the cases holding that one claiming from the vendee is an innocent purchaser so that he is preclud,d from the necessity of inquiring of the immediate vendor who is in possession of the premises what right said vendor has. As said above, plaintiff was not the vendor as to any of these defendants subsequent to the execution of warranty deed to N. T. Heard, deceased. If N. T. Heard was the vendee within the terms of the above authorities cited by defendants, it cannot be claimed under any principle that Ra'ph C. Heard was a vendee.

The fourth, fifth, and sixth assignments of error are errors of law occurring at the trial of said cause and excepted to by plaintiffs in error at the time; that said court erred in admitting evidence on the part of the defendants in error; and that said court erred in refusing and ruling out competent and legal evidence on the part of the plaintiffs in error.

We have considered these errors in connection with the propositions above stated. We are of the opinion that the court heard sufficient testimony to present ful y the issues between the parties. Finding no error in the judgment of the trial court, the same is affirmed.

McNEILL, C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.